**RECORD NOS. 15-2184(L); 15-2262 XAP**

In The
# United States Court of Appeals
For The Fourth Circuit

## BRIAN A. EISEN,

*Intervenor – Appellant/Cross-Appellee*,

**v.**

## DCG&T, f/b/o Jack Battaglia/IRA;
## JACK BATTAGLIA; DCG&T f/b/o Lori Battaglia/IRA,

*Plaintiffs – Appellees/Cross-Appellants*,

**and**

## GLADE M. KNIGHT; MICHAEL S. WATERS; ROBERT M. WILY; BRUCE H. MATSON; JAMES C. BARDEN; APPLE REIT NINE, INC.,
### now known as Apple Hospitality REIT, Inc.,

*Defendants – Appellees*,

## KRISTAN GATHRIGHT; JUSTIN KNIGHT;
## DAVID MCKENNEY; BRYAN PERRY and DOES 1-10

*Defendants*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

_____

### RESPONSE AND REPLY BRIEF OF APPELLANT/CROSS-APPELLEE

_____

Michael L. Donner, Sr.
CARRELL BLANTON FERRIS & ASSOCIATES, PLC
7275 Glen Forest Drive, Suite 310
Richmond, Virginia  23226
(804) 285-7900

*Counsel for Intervenor – Appellant/Cross-Appellee*

# I.    TABLE OF CONTENTS

**Page**

II.    TABLE OF AUTHORITIES ........................................................................ iii

III.    JURISDICTIONAL STATEMENT ............................................................1

IV.    ISSUES PRESENTED FOR REVIEW .......................................................2

V.    STATEMENT OF THE CASE ....................................................................4

VI.    SUMMARY OF THE ARGUMENT AS TO EISEN'S STANDING ...........4

VII.    ARGUMENT AS TO APPELLANT'S CROSS-APPEAL ...........................5

    A.    The district court correctly held that Eisen had standing to object to the Settlement ........................................................5

        1.    The plaintiffs failed to preserve this argument for appeal ..........5

        2.    On the merits, the district court correctly held that Eisen had standing to object to the settlement .....................................7

            a.    The POA made Eisen an eligible distributee under the Settlement .................................................................8

    B.    Eisen has standing to maintain this appeal.........................................12

VIII.    EISEN'S REPLY TO THE APPELLEE'S RESPONSE IN THE ORIGINAL APPEAL ...............................................................................14

    A.    The plaintiffs' brief insinuates that discovery in this case had been completed and was sufficient from which an adequacy determination could be made. It was not ............................................14

    B.    The district court abused its discretion by making a factual finding of adequacy on an insufficient evidentiary record .................18

IX.   CONCLUSION AND RELIEF SOUGHT .......................................................20

    A.   Conclusion ........................................................................................20

    B.   Relief Sought ....................................................................................27

X.   CERTIFICATE OF COMPLIANCE

XI.   CERTIFICATE OF FILING AND SERVICE

## II.     TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Berry v. Schulman,*
  807 F.3d 600 (4th Cir. 2015) ..........................................................................26

*Constantine v. Rectors & Visitors of George Mason Univ.,*
  411 F.3d 474 (4th Cir. 2005) ...........................................................................1

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002).......................................................................5, 12, 13, 14

*Flinn v. FMC Corp.,*
  528 F.2d 1169 (4th Cir. 1975) ................................................................19, 24

*Grant v. Bethlehem Steel Corp.,*
  823 F.2d 20 (2d Cir. 1987) ............................................................................ 24

*In re Cendant Corp. Litigation,*
  264 F.3d 201 (3d Cir. 2001) .......................................................................... 24

*In re Jiffy Lube Sec. Litig.,*
  927 F.2d 155 (4th Cir. 1991) .........................................................................24

*In re Kirkland,*
  600 F.3d 310 (4th Cir. 2010) ...........................................................................1

*Levy ex rel. Mktg. Servs. Group, Inc. v. GE Capital Corp.,*
  2001 U.S. Dist. LEXIS 13099,
  2001 WL 987873 (S.D.N.Y. Aug. 30, 2001) ................................................23

*Reynolds v. Ben. Nat'l Bank,*
  288 F.3d 277 (7th Cir. 2002) ......................................................................... 24

*Stewart v. General Motors Corp.,*
  756 F.2d 1285 (7th Cir. 1985) ....................................................................... 24

*United States v. Lavabit, LLC (In re Under Seal)*,
  749 F.3d 276 (4th Cir. 2014) ...........................................................................7

**STATUTES**

28 U.S.C. § 1332(a)(1).......................................................................................2

28 U.S.C. § 1332(d)(2).......................................................................................1

28 U.S.C. § 1367................................................................................................2

Va. Code § 13.1-690(C) ..................................................................................19

Va. Code § 13.1-735.1(A)..........................................................................5, 7, 10

**RULES**

Fed. R. App. P. 28(a)(4)(A) ..............................................................................2

Fed. R. App. P. 28(a)(4)(B)-(E).........................................................................2

Fed. R. App. P. 28.1(c)(3)..................................................................................1

Fed. R. Civ. P. 23.1(c)..................................................................................22, 24

Pursuant to Fed. R. App. P. 28.1(c)(3), the Appellant, Brian A. Eisen, files this: (a) brief in response to the Appellee's principal brief in the Appellee's cross-appeal; and (b) brief in reply to the Appellee's response in Eisen's appeal.

## III.   JURISDICTIONAL STATEMENT.

Eisen pointed out in his jurisdictional statement in his opening brief that: (a) the plaintiffs below had pled 28 U.S.C. § 1332(d)(2) as their sole basis for federal diversity; (b) the district court dismissed all the class claims pled in the plaintiffs' First Amended Complaint, thereby removing 28 U.S.C. § 1332(d)(2) as a basis for federal jurisdiction; and (c) the district court never made a determination on what statutory basis it continued to exercise federal jurisdiction over the only remaining count of the First Amended Complaint: a state-law derivative lawsuit. As this question goes to the lower court's subject matter jurisdiction, this question can be raised at any time, even in this Court for the first time. Subject matter jurisdiction can be raised by either party, *or sua sponte* by the court, at any time. *See*, *e.g.*, *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010) ("Subject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court *sua sponte*, at any time prior to final judgment."). Further, a "federal court has an independent obligation to assess its subject-matter jurisdiction." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005).

In short, the solely-pled federal jurisdictional basis for the plaintiff to proceed below was destroyed when the district court dismissed the last of the class-action claims in the First Amended Complaint. Neither plaintiff nor defendant made a motion for the district court to retain federal jurisdiction over the one remaining state-law count under 28 U.S.C. § 1367; nor was any proffer made to the district court presenting a factual basis that the district court could exercise jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

Accordingly, to the extent the Appellee's jurisdictional statement conflicts with the statement in Eisen's opening brief and this reply brief, Eisen does not agree with the jurisdictional statement in the Appellee's opening brief on its cross-appeal, as such statement relates to the requirements of Fed. R. App. P. 28(a)(4)(A).

Eisen is satisfied with the Appellee's statement of jurisdiction as it relates to the requirements of Fed. R. App. P. 28(a)(4)(B)-(E).

## IV.    ISSUES PRESENTED FOR REVIEW.

Eisen agrees with the Appellee's statement of the shareholder standing issue the Appellee presents on his cross-appeal.

Eisen disagrees with the Appellee's re-statement of the issue presented in Eisen's appeal. The Appellee says the issue presented is whether the Settlement was "fair, reasonable, and adequate." Plaintiff's Brief, at 7. Eisen has conceded

2

from the time of the Fairness Hearing that he does not contest that the parties went though the process steps sufficient for the district court to find that the Settlement was "fair." JA 475. (Eisen's counsel: "[T]he fairness process is not the issue I am raising today. I'm not even going to discuss that. I would even arguably say that the fairness prong has been met . . . .So, what I want to focus on is the adequacy issue.").[1] Eisen's opening brief (emphasis added) clearly states that the only issue on appeal is whether the district court abused its discretion by finding the settlement *adequate* . . .".

Yet, at every step in this proceeding, the Appellee brings up the "fairness" issue. The appellee expanded Eisen's statement of the case to a 10-page recitation, in great detail, of the procedural aspects of the case below[2] devoted to *litigation process* (which deals with the fairness, not the adequacy issues)*,* and devotes pp.28-32 of his brief arguing that the settlement was "fair", when Eisen has conceded the Settlement's fairness since at least September 14, 2015. The appellee is doing this on purpose, to focus this Court's attention on the Settlement's process and away from the lack of evidentiary record on which the district court found the settlement adequate.

---

[1] *See also* JA 474-475 (District Court: "The fairness essentially is a look at what the parties went through to reach the settlement." Eisen's counsel: "Correct.")

[2] Eisen does not say that the Appellee's procedural recitation is wrong; just that it is unnecessary to determine whether the evidence was sufficient to determine the settlement's adequacy.

So, Eisen incorporates by reference here the issue presented that he identified in his opening brief.

## V.    STATEMENT OF THE CASE.

Eisen does not contend that the Appellee's 10-page Statement of the case is factually incorrect. Eisen's position is simply, as discussed above, most of it is unnecessary to determine whether the evidentiary record was sufficient to determine the Settlement's adequacy.

## VI    SUMMARY OF THE ARGUMENT AS TO EISEN'S STANDING.

The Plaintiffs drafted a Plan of Allocation ("POA") that determined which old AR-9 shareholders would get a disbursement from the Settlement.

The POA said, in effect, if you were an old AR-9 shareholder on August 7, 2013, and held those shares through the merger date of March 1, 2014, then you would receive a disbursement from the Settlement.

Eisen was an old AR-9 shareholder from August 7, 2013, continuously, until he turned his shares back over to the Company as part of an appraisal rights process *no earlier than* April 11, 2014.

Eisen was, therefore, to receive a disbursement from the Settlement.

As an Eligible Distributee under the Settlement, Eisen had standing to object to the Settlement.

Under *Devlin v. Scardelletti*, 536 U.S. 1 (2002), Eisen has standing to maintain this appeal.

## VII.  ARGUMENT AS TO APPELLANT'S CROSS-APPEAL.

### A.  The district court correctly held that Eisen had standing to object to the Settlement.

The plaintiff first states that Eisen did not have "shareholder standing" to object to the proposed settlement in the district court. Plaintiff's Brief at 19. According to the plaintiff, this is because Eisen exercised his appraisal rights under Va. Code § 13.1-735.1(A) "on several occasions, the earliest being February 12, 2014 and the latest being on or about April 9, 2014", and, in doing so, Eisen "lost his rights as a shareholder." *Id.*

#### 1.  The plaintiffs failed to preserve this argument for appeal.

The plaintiffs raised in writing before the district court this appraisal-rights-action-preclusive-effect argument before the district court, JA 454, but the plaintiffs abandoned that position – in fact, took ***the exact opposite position***, at oral argument before the district court.

> District Court:    Well, tell me this. What does this settlement do to Mr. Eisen's [appraisal rights] lawsuit in Richmond?
>
> Plaintiff's Counsel: Your Honor, it doesn't appear to do anything. I mean, no one has asserted that it does anything. The release[d] claims to not include expressly or implicitly appraisal claims. They only include claims that were brought or could have been brought here.

> Appraisal claims cannot be brought here. So they are not
> released. . . . I think arguably if he is able to collect here,
> in the appraisal proceeding the company [will have an
> offset argument].

JA 495-96.

The district court directly asked the plaintiffs about the interplay of the

federal litigation (with Eisen as an objector) and the state litigation (with Eisen as a

party). Plaintiffs never said one word that the appraisal action provided Eisen his

sole remedy; never argued to the district court that the appraisal process constituted

Eisen's sole remedy; never claimed that the appraisal process stripped Eisen of

"shareholder standing" – to the contrary, plaintiffs clearly saw both federal and

state actions proceeding in parallel, with any recovery Eisen received in the state

action potentially offset by money he received from the federal settlement.

The Company's counsel weighed in on this question, too. In response to the

district court's question as to whether the federal case "wipe[d] out" or

"diminish[ed]" his claims in the state court action, defendants' counsel replied: "I

think at a minimum it would offset anything he would get in the appraisal action. I

haven't analyzed [the appraisal action statute] enough to know . . . . [I]t's an

interesting statute, and it hasn't been well developed. There are not a lot of cases

on it." JA 496-497.

The district court invited both plaintiffs' and company counsel specifically

to comment on the interplay of the federal and state actions, and NOT ONCE did

6

either say anything about the appraisal action affecting Eisen's standing as an objector. In fact, what they did say (talking about offsets in the state action due to a payout under the settlement) clearly contemplated the state action continuing ***and*** Eisen getting a distribution from the settlement.

> Arguments raised in a trial court must be specific and in line with those raised on appeal. To preserve an issue for appeal, an objection or argument must be timely and state the grounds on which it is based. It follows then that an objection on one ground does not preserve objections based on different grounds. Similarly, a party does not go far enough by raising a non-specific objection or claim. If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court.

*United States v. Lavabit, LLC (In re Under Seal)*, 749 F.3d 276, 287 (4th Cir. Va. 2014)(internal citations and quotations omitted).

Here, the plaintiffs not only failed to press their shareholder standing argument before the district court, they completely abandoned it; and admitted that both the federal and state actions could proceed in parallel without effecting Eisen's eligibility for his Settlement payout under the Plan of Allocation. They failed to preserve the shareholder standing argument they now raise on appeal.

### 2.    On the merits, the district court correctly held that Eisen had standing to object to the settlement.

Under Va. Code § 13.1-735.1(A), Eisen exercised his appraisal rights no earlier than April 11, 2014, which was ***after*** the March 1, 2014 merger of AR-7, 8,

and 9. This made Eisen eligible under the plaintiff's Plan of Allocation ("POA") for a distribution payment under the Settlement. Eisen's status as an AR-9 shareholder *vel non* is relevant **only** insofar as it classifies him as an eligible distributee under POA.

In short, as the argument below shows, the POA classified Eisen as an eligible distributee (*i.e*., someone who would receive money from the settlement); therefore, the district court correctly held that Eisen had standing to appear and object to the settlement, regardless of his appraisal rights demand that postdated the March 1, 2014 merger.[3]

### a.    The POA made Eisen an eligible distributee under the Settlement.

***One*** document, in this entire voluminous record, determines which AR-9 shareholders would get a payment from the Plaintiffs' Proposed Settlement: the *Plan of Allocation*. JA 370A-370B. Therefore, we must go carefully thorough the POA  to determine whether Eisen was to get a payment from the settlement.

The POA defines an "Eligible Distributee" of the Settlement as follows:

> All persons who were beneficial owners of Apple REIT Nine, Inc., ***on August 7, 2013***, and who continued to own those shares through the date of the shareholder approval of the merger of Apple REIT Nine, Inc. and Apple REIT

---

[3] It is important to note here that the POA, in the plaintiff's own words, was "developed, calculated, sponsored, petitioned for approval, and executed solely by the Plaintiffs . . .". JA 355. In other words, it was the ***plaintiffs themselves*** who drafted the POA that made Eisen an eligible distributee.

Eight, Inc. and Apple REIT Seven, Inc. ***as of the date of the merger of the three entities in 2014.***

JA 370A, ¶I(A)(emphasis added).

To get a payout from the settlement, therefore, one had to be an AR-9 shareholder on both: (a) August 7, 2013; and (b) March 1, 2014 (the date of the merger).

The *Plan of Allocation* further defines "Eligible Old Apple REIT Nine, Inc. Shares" as follows:

> [T]he number of Old Apple REIT Nine Shares held by an eligible distributee on August 7, 2013 and held continuously through the date of the merger of the three entities as described above and which the Eligible Distributee voted "against" the merger of the three entities MINUS the number of shares of Apple REIT Seven, Inc. and Apple REIT Eight, Inc. held as of the date of the merger.

JA 370A ¶I(C).

Mr. Eisen was a beneficial owner of approximately 90,909.091 shares of Apple REIT Nine, Inc. stock on August 7, 2013. Docket 122-1, p.2, ¶3. He continued to own those shares in Apple REIT Nine, Inc., through the date of the merger of Apple REIT Seven, Inc., Apple REIT Eight, Inc., and Apple REIT Nine in March 2014. *Id.*

The effective date of the merger of Apple REIT Seven, Inc., Apple REIT Eight, Inc., and Apple REIT Nine was March 1, 2014. *Id.*, ¶4. Shortly after March

9

1, 2014, Mr. Eisen received a Notice of Appraisal Rights from Apple Hospitality REIT, Inc. ("AHR") dated March 11, 2014, identifying the effective date of the merger as March 1, 2014 and notifying him of his right to exercise his appraisal rights under the Virginia Code. *Id.*

Va. Code § 13.1-735.1(A) (emphasis added) provides:

> A shareholder who receives notice . . . and who wishes to exercise appraisal rights must complete, sign, and return the form sent by the corporation . . . by the date referred to in the notice . . . . Once a shareholder deposits that shareholder's certificates or, in the case of uncertificated shares, ***returns the signed form***, that shareholder loses all rights as a shareholder, unless the shareholder withdraws pursuant to subsection B.

Va. Code § 13.1-735.1(A) is clear: Eisen did not lose any rights as an AR-9 shareholder until he "returned the signed form" demanding the exercise of his appraisal rights.

By letter to Apple Hospitality REIT, Inc. ("AHR") dated April 11, 2014, received by AHR on April 14, 2014, Mr. Eisen returned his signed Demand for Payment.  Pursuant to Va. Code § 13.1-735.1(A), the date that signed Demand for Payment was "return[ed]" to AHR was the date that Mr. Eisen "[lost] all rights as a shareholder" in Old Apple REIT Nine, Inc. and/or AHR. The statute is not clear as to whether "returned" means the day Mr. Eisen sent the form or the date AHR received the form; but that is immaterial; either day was ***after*** the effective date of the merger: March 1, 2014. Therefore, Mr. Eisen was a shareholder in AHR

10

through the date of the merger. *Id.*, ¶5. Mr. Eisen voted his Apple REIT Nine, Inc. shares "against" the merger of Apple REIT Nine, Inc. with Apple REIT Eight, Inc. and Apple REIT Seven, Inc. *Id.*, ¶6.

Mr. Eisen owned no shares in Apple REIT Seven, Inc. or Apple REIT Eight, Inc. as of the applicable dates defined in the Plan of Allocation. Therefore, all of his Apple Nine, Inc., shares held as of August 7, 2013 are "Eligible Old Apple REIT Nine, Inc.", as the Plan of Allocation defines that term. *Id.*, ¶7.

Therefore, the Plan of Allocation calls for Mr. Eisen to receive a distribution from the proposed settlement, because:

(a) He owned shares of Apple REIT Nine, Inc. from:

(i)  (At least) August 7, 2013;

(ii)  Through the March 1, 2014 merger of Apple REIT's Seven, Eight, and Nine; and

(b) He voted those shares against the merger of the three REIT's at issue, making his shares Eligible Old Apple REIT Nine, Inc.

Because Eisen fits exactly within the POA's definition of an "eligible distributee", Eisen stood to receive a distribution from the settlement. The district court considered this entire factual and legal argument at oral argument at the beginning of the Fairness Hearing, and correctly concluded that Eisen had standing to object to the settlement.

11

**B.    Eisen has standing to maintain this appeal.**

Plaintiffs next argue that "[A]t the time . . . Eisen exercised his appraisal rights, he lost all rights as a shareholder . . . Nor is he able to establish any injury or interest that would enable him to invoke appellate standing." Plaintiff's Brief at 22.

This question is easily disposed of. In *Devlin v. Scardelletti*, 536 U.S. 1 (2002), the United States Supreme Court, on *certiorari* to this Court, clearly held that a non-named member of a class, who is going to receive a payout from a class-action settlement, is a proper party to maintain an appeal from that settlement's approval – and the issue of jurisdictional standing is not even implicated.

> Although the Fourth Circuit framed the issue as one of standing, we begin by clarifying that this issue does not implicate the jurisdiction of the courts under Article III of the Constitution. As a member of the retiree class, petitioner has an interest in the settlement that creates a case or controversy sufficient to satisfy the constitutional requirements of injury, causation, and redressability.

*Devlin*, 536 U.S. 1, 6-7 (internal citations and quotations omitted).

Because, as shown in detail in the previous section, Eisen stood to receive a payout from the plaintiffs' POA, he was in the same position as the appellant in *Devlin*. In other words, Eisen's interest in his settlement distribution, in and of itself, provides that injury, causation, and redressability sufficient to find Article III standing to appeal the district court's approving the settlement.

Nor does this case raise any question of prudential standing:

> Nor do appeals by nonnamed class members raise the sorts of concerns that are ordinarily addressed as a matter of prudential standing. Prudential standing requirements include: The general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.
>
> Because petitioner is a member of the class bound by the judgment, there is no question that he satisfies these three requirements. The legal rights he seeks to raise are his own, he belongs to a discrete class of interested parties, and his complaint clearly falls within the zone of interests of the requirement that a settlement be fair to all class members.

*Devlin*, 536 U.S. at 7.

Because Eisen is an Eligible Distributee of the Settlement Class, bound by the judgment approving the settlement, he clearly, under *Devlin*, satisfies prudential standing requirements.

And, finally, under *Devlin*, here is why Eisen is properly before this Court on appeal:

> What is most important to this case is that nonnamed class members are parties to the proceedings in the sense of being bound by the settlement. It is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will

13

ultimately bind them, despite their expressed objections before the trial court. Particularly in light of the fact that petitioner had no ability to opt out of the settlement . . . appealing the approval of the settlement is petitioner's only means of protecting himself from being bound by a disposition of his rights he finds unacceptable and that a reviewing court might find legally inadequate.

*Devlin*, 536 U.S. at 10-11.

To summarize the appellate standing argument: (a) Eisen is an Eligible Distributee under the Plaintiffs' POA; and (b) under *Devlin,* that give Eisen Article III and prudential standing to pursue this appeal.

## VIII. EISEN'S REPLY TO THE APPELLEE'S RESPONSE IN THE ORIGINAL APPEAL.

### A. The plaintiffs' brief insinuates that discovery in this case had been completed and was sufficient from which an adequacy determination could be made. It was not.

The plaintiffs state that, by the time the settlement agreement was reached, "[the Plaintiff] compelled the Defendants to produce the equivalent of 100 boxes of documents, which [Plianitff's] counsel reviewed and analyzed, before take the depositions of seven essential fact witnesses." Plaintiffs' Brief, at 33. Plaintiff tries to leave the impression that the defendants had produced these documents, the plaintiffs' counsel reviewed them, and the review was complete before the depositions, giving the plaintiffs a good view of the damage issues present in this case. But that is not what happened at all.

14

On March 19, 2015 (a Thursday), less than 4 months before trial, the district court held a hearing on plaintiffs' outstanding motions to compel discovery from the defendants. JA 291. The plaintiff's brief gives the impression discovery had run smoothly and the plaintiffs got their requested documents in time to adequately analyze them; that simply was not the case. By the March 19, 2015 hearing, the district court had lost its patience at the defendants' stonewalling discovery:

> District Court: Well, it's clear to me that the parties in this case have fowled [*sic* in the transcript, should be "fouled"] up discovery so badly that I don't know how plaintiff's expert can give an opinion that is not in some way affected by documents that will be produced in the future.
>
> I think the defendants have been playing fast and loose with the discovery rules in this case.
>
> So, … I am going to take over supervision of discovery in this case. I don't want to do that. But, if you all have to come down here every Friday between now and whenever this case is set for trial, we will do that.
>
> JA 310.

"Late" (JA 329) on the Friday before the hearing, which would have been on March 13, 2015 (exactly 4 months before trial), the defendants had delivered to the plaintiffs a hard drive and 2 discs (JA 329), which contained the equivalent of "about a hundred" boxes of documents that the defendants claimed were responsive to plaintiffs' discovery. JA 329. The documents were produced electronically (not really in boxes), with no "index or guide" to the documents that

15

the defendants had produced. JA 329. Plaintiffs' counsel acknowledged receipt of the documents, and acknowledged further that he (and his team) "will look through every page" and "we can make our way through them. ***I think not in time to get them to the experts on this schedule. That is really the point.***" JA 331 (emphasis added).

Additionally at issue at this March 19, 2015 hearing was the plaintiffs' motion to compel production of documents related to a previous investigation the SEC conducted on the defendant – apparently the plaintiffs were seeking documents that the defendants had produced as part of that investigation (from the context of the hearing, it appears that these documents were separate from the "100 boxes" that the defendant had already produced the Friday before). Additionally, the plaintiffs were seeking documents that they had subpoenaed from some of the defendants' financial advisors.

Counsel for the defendant indicated to the district court that the defendants "have . . . a data base that contains [1.6] million pages of material in electronic format," apparently responsive to the SEC-related request. JA 315. Counsel for the plaintiffs stated that "it would take 5 lawyers a year each at 2000 hours to go through the documents, . . . at the rate of 2 pages per minute." JA 320. Again, none, not one, of these documents had been produced as of the March 19, 2015 hearing, less than 4 months before trial.

16

At the end of the March 19, 2015 hearing, other than stating that he was not going to order the defendants to turn over "the whole SEC file" and he was not going to order the defendants to turn over "everything the banks have," JA 338, the district court ordered the parties to meet and confer about document production and report back to the Court on March 27th. So, as of the end of the March 19, 2015 hearing, the parties had not agreed to document production, nor had the Court ordered specific documents produced.

On March 26, 2015, the Court extended the plaintiffs' deadline for filing/disclosing their expert report to April 15, 2015. JA 346.[4] This was less than 4 weeks after the plaintiffs' received their "100 boxes of documents" which the plaintiffs had just barely started to review on March 19, 2015. The depositions touted by the Plaintiffs' brief were taken "throughout April and early May 2015", again effectively immediately after the 100-box document dump the defendants had produced for the plaintiffs. JA 384.

So, in effect, here is the plaintiffs' argument in their brief: (a) plaintiffs received the paper equivalent of 100 boxes of document discovery on March 13, 2015; (b) still outstanding from that request as of March 19, 2015 were documents requests related to advisory banks and documents the defendants produced to the SEC, the initial volume of which apparently was 7 times more than the 100-box-

---

[4] Apparently, the actual plaintiffs' expert disclosures were not served on the defendant until "early May 2015." JA 384.

17

equivalent of documents discussed above; (c) yet in the course of March 19-May 6, 2015, the plaintiffs were able to index, collate, and make sense of these thousands (millions?) of documents, and produce a meaningful expert report as to the amount of damage AR 9 suffered at the hands of its rapacious directors. To anyone who has ever conducted litigation, does that make sense? Does it at least not prompt further inquiry from the district judge as to the factual basis on which the plaintiffs approval of the settlement as adequate?

### B.    The district court abused its discretion by making a factual finding of adequacy on an insufficient evidentiary record.

The district court made no findings about the strength of the plaintiffs' case, either as to liability or damage. None whatsoever. In the little over one page of the transcript where the district court discussed its reasoning for finding adequacy, it stated: (a) "I think on the merits the plaintiff has some issues"; and (b) "I think it would be a strong case for the business judgment rule to allow them to prevail." JA 498-499. No cites to the record; no identification, with reference to any record, about what the plaintiffs' "issues" were; nor any reference to any facts which convinced the district court that the Business Judgment Rule barred the plaintiffs' recovery.

The district court applied no facts to its analysis (looking now at the district court's ruling from the bench and its final judgment order) to determine: (a) what was the plaintiffs' case strength as to the breach of fiduciary counts against the

18

directors? (b) what was the strength of the plaintiffs' case as to damages? (c) what facts, applied to Va. Code § 13.1-690(C) (Virginia's business judgment rule statute), gave the directors the "strong case" that the district court found they had? (d) what was the strength of the defendants' damage case?

Recall, in *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-1173 (4th Cir. 1975)(emphasis added), this Court directed that the "***most important factor to be considered in determining whether there has been such a clear abuse of discretion is whether the trial court gave proper consideration to the strength of the plaintiffs' claims on the merits***."

The district court failed to consider the very factors that this Court directed were the ***most important*** ones.

In determining that the plaintiffs' case had "issues" and the defendants had a strong case for the business judgment rule, the district court was making factual determinations. Factual determinations without any cited evidentiary support are clearly erroneous, and the district court abused its discretion in this case in making such an unsupported factual finding of adequacy with no, absolutely no, cite to the record.

19

## IX.  CONCLUSION AND RELIEF SOUGHT

### A.  Conclusion.

Here is exactly what happened in this case. Sometime in 2013, Glade Knight, who effectively ran AR-7, AR-8, and AR-9, decided to make himself a little bit of money. He merged the 3 REIT's into one, cooking up a merger procedure whereby his preferred stock in AR-9 (not worth much) was converted to additional shares of common stock in AR-9 (worth about $11/share), netting him and his insiders $200 million. JA 302 ll.4-6 and JA 303, ll.4-9. As the district court observed: "Glade Knight came out of this transaction smelling like a rose." JA 325. By which the district court meant he came out of it a rich man. JA 325.

Naturally, *some* AR-9 shareholders were going to scream about Knight's self-interested transaction. Directors, with fiduciary duties to their shareholders, just pocketed $200 million for themselves in a merger transaction. The plaintiff files this suit, and begins to fight the good fight. Preliminary motions reduce the action to one count against Knight and his insider cronies: a derivative breach of fiduciary duty count.

Then, the defendants' discovery stonewalling starts. Trial in this case is set for July 13, 2015. Trial continuances are not granted in the Eastern District of Virginia – everyone who litigates here on the Rocket Docket knows that. So, the defendants filed objections after objections to discovery; when they lost the

subsequent motions to compel, they moved the court to reconsider; they asked for an interlocutory appeal of a discovery order (!) JA 284; all of which was simply designed to, as the plaintiffs correctly point out, "frustrate production of relevant and discoverable documents." JA 382-383.

The defendants did succeed in frustrating the discovery process; and the district court judge. As the record shows, still, by March 19, 2015, the defendants were frustrating normal discovery, and the district court got tired of it. The district court overtook the management of discovery and told defendants' counsel that she was playing fast and loose with discovery rules. JA 310.  It appears from a review of the record that the plaintiffs did not get their first substantial document production from the defendants until on or about March 13, 2015. JA 329.

About seven weeks later, the plaintiffs, looking at all the trial preparation work required to take this matter to trial, looking at the hundreds of boxes of documents that had recently been produced (and more to come), and seeing a trial date about 2 months in the future, went to a Settlement Conference with U.S. Magistrate Judge Novak here in Richmond. JA 384.

At that conference, the plaintiffs settled the case for $12 million, which was within the limits of what the plaintiffs believed was Glade Knight's insurance coverage. JA 385. So, the plaintiffs' counsel is now looking at pocketing $4 million in attorneys fees without having to actually wade through thousands of

documents and try the case; and Glade Knight pockets his $200 million from the transaction while his insurance picks up some of the the $12 million and he pays the rest as his cost of doing business.

All this is not, in and of itself, bad. No one, including undersigned counsel, begrudges another lawyer a good fee. No one begrudges a businessman a $200 million profit; But while everyone is patting themselves on the back about a job well done, and walking out the door with their pockets lined by millions of dollars, the ultimate question gets lost: who looks out for the AR-9 shareholder?

One needs look no further than Fed. R. Civ. P. 23.1(c) to find the answer to that question: the district court. The district court must approve the settlement; the district court keeps the millionaires in the courtroom until the settlement proponents convince the district court judge that the Settlement is fair and adequate to the shareholders. At this critical juncture, the district court is hamstrung by the fact that the lawyers who once were adversaries, challenging each other's arguments, have now come over to the same side:

> Settlements and compromises in derivative . . . actions require a district judge's approval before they are effective. Yet the parties, who before their compromise were vigorous adversaries, checking each exaggeration and contention by corrective reaction and counter-contention, are now joined in harmony, complementing each other's representations that the compromise submitted for the court's approval is the best that human effort and ingenuity could feasibly have produced. At a time that the district judge most needs an adversary's

22

comments, all adversaries have left the field. *See* John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory of Private Enforcement of Law Through Class and Derivative Actions*, 86 Colum.L.Rev. 669, 714 (1986)("The principal-agent problem that is endemic to class and derivative actions implies that there are three sets of interests involved in these actions: those of the defendants, the plaintiffs, and the plaintiff's attorneys. Often the plaintiff's attorneys and the defendants can settle on a basis that is adverse to the interests of the plaintiffs. At its worst, the settlement process may amount to a covert exchange of a cheap settlement for a high award of attorney's fees.")

. . .

Generally, courts favor compromises of disputed claims. *Williams v. First Nat'l Bank*, 216 U.S. 582, 585, 54 L. Ed. 625, 30 S. Ct. 441 (1910); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)(noting the "general policy favoring the settlement of litigation"); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). This is as true for Section 16(b) cases as for other class and representative actions. *Schimmel v. Goldman*, 57 F.R.D. 481 (S.D.N.Y. 1973). The district courts, however, have an independent role to review settlements for fairness and consistency with statutory purposes. ***The task of the district courts is not easy, for plaintiffs and defendants have submerged their adversary relationship in order, together, to propose the settlement which they have negotiated, including the fee to be awarded to derivative counsel.***

*Levy ex rel. Mktg. Servs. Group, Inc. v. GE Capital Corp.*, 2001 U.S. Dist. LEXIS 13099, *15-18, 2001 WL 987873 (S.D.N.Y. Aug. 30, 2001)(Hellerstine, District Judge)(emphasis added)(denying approval of a settlement derivative suit Settlement Agreement).

As stated in Eisen's opening brief, some circuits have held that the district court's approval duty is akin to a fiduciary duty: "We and other courts have gone so far as to term the district judge in the settlement phase of a class action suit a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Reynolds v. Ben. Nat'l Bank*, 288 F.3d 277, 279-280 (7th Cir. 2002), *citing Stewart v. General Motors Corp.*, 756 F.2d 1285, 1293 (7th Cir. 1985); *further citing In re Cendant Corp. Litigation*, 264 F.3d 201, 231 (3d Cir. 2001); *further citing Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2d Cir. 1987).

Eisen would ask this Court to adopt that fiduciary standard for district courts considering settlements under Fed. R. Civ. P. 23.1(c) that the 7th, 3rd, and 2nd Circuits appear to have already adopted. Even if this Court does not go that far, it has already, in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) at least directed that the district court must determine that the settlement is adequate.

The district court here failed to follow *Jiffy Lube* and *Flinn.* With all due respect to the district court, it gave short shrift, or no shrift at all, to the very factor this this Court in *Flynn* identified as the most important: the relative strength of the plaintiffs' case.

The finding of "adequacy" is a factual finding. An abuse of discretion appellate standard in determining the sufficiency of the evidence for a factual finding is the most lenient appellate standard there is. All the district court had to do was support its factual finding of adequacy with cites to facts in the record that

supported that finding. But the district court failed to do this. In its reasoning from the bench and in its written order, the Court cites to no part of the record at all; it makes no formal factual finding related to the strength of the plaintiffs' case (as to either liability or damages) or the defendants' business judgment rule defense based on any record cite at all. Its **one** sentence on the topic of the strength of the plaintiffs' case says: "I think that on the merits the plaintiff has some issues." JA 498.[5] No issues are identified, and no cites are made to the record to support that factual finding that the plaintiffs' case has issues.

---

[5] Even more concerning is the district court's relying almost solely on the representations of plaintiffs' counsel at the Fairness Hearing related to relative strengths and weaknesses of the plaintiffs' and defendants' cases. This is concerning because the district court had an issue with that same counsel's candor at the March 19, 2015 hearing. At issue on March 19, 2015 was a statement that plaintiffs' counsel had made at a deposition regarding the continued viability of Count IV of the Amended Complaint. The Court clearly stated that the Court would have interpreted plaintiffs' counsel's remark at the deposition as "Count IV [being] out the window and [plaintiffs' counsel] will file something that will take care of that." JA 305. Upon counsel's argument that he did NOT commit to dismissing Count IV, the district court stated: "I think you are playing it pretty close to the line on this." JA 306. After slight further discussion, the district court concluded that colloquy with the remark to plaintiffs' counsel: "But I would have to say that . . . I have trouble believing anything you say after that." JA 306. What the district court saw as a misrepresentation by plaintiffs' counsel so concerned the district court that the district court later said, *sua sponte*, concerning plaintiffs' counsel who is barred in New York : "Now, I'm not entirely sure what remedies there are for this in New York, and I recognize that counsel for the defendant is not in a position at this time to file a bar complaint in New York on this because you are not allowed to use that as a way to get an advantage in a civil case, but I am going to think about it and I might do it." JA 309-310. This was an extraordinary rebuke to plaintiffs' counsel regarding his candor; yet this was the same plaintiffs' counsel, at the Fairness Hearing, less than 6 months later, who made plaintiffs' major case for settlement.

Compare this case to a class settlement that this Court recently found was

adequate in *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015). In *Berry*, the district

court carefully explained the specific legal issue that made the plaintiffs' case so

difficult (the proving of willfulness under the Fair Credit Reporting Act), pointed

in the record to an information privacy lawyer who put a value on the benefit

obtained by the settlement; this Court commented favorably on the "fact-intensive

analysis of the benefits to the settling class.

> The district court described the injunction in this case as
> implementing a substantial, nationwide program that
> addresses the issues raised in the Complaint by the (b)(2)
> Class and will result in a significant shift" in industry
> practices, making Lexis the industry leader in consumer-
> information protection. Indeed, the record includes a
> finding by an information privacy law expert that the
> injunctive relief provided in the Agreement provides
> consumers with benefits so substantial that their
> monetary value is in the billions of dollars.
>
> .   .   .   .
>
> We can find no reason to disturb the district court's
> assessment of ***the relative strength of the parties' legal
> positions or its fact-intensive analysis of the benefits
> provided the (b)(2) Class by the parties' settlement.*** In
> our view, the district court was well within its discretion
> in approving the settlement as fair, reasonable, and
> adequate under Rule 23(e).

*Berry v. Schulman*, 807 F.3d 600, 615 (4th Cir. 2015)(emphasis added).

No such fact-intensive analysis appears here in the district court's reasoning.

By any appellate standard, even the most lenient one, the district court's finding of

adequacy here, unlike in *Berry,* was made without a sufficient factual foundation. As such, the district court, with all due respect, abused its discretion in making the factual finding that this settlement was adequate.

### B.    Relief Sought.

On the cross-appeal of the appellee, Eisen moves this Court to find that, on either of the alternative bases that: (a) the plaintiffs abandoned the shareholder standing argument before the district court; and/or, as discussed above, (b) on the merits, Eisen, as a distributee under the plaintiffs' POA had standing to object to the settlement, and the district court's finding as to Eisen's having standing to object to the Settlement should be affirmed.

On Eisen's original appeal, Eisen moves this Court to: (a) vacate the order of the district court finding that the Settlement was adequate, on the grounds that the factual finding of adequacy made by the district court was not supported by the evidentiary record, and thus the district court abused its discretion in finding the settlement adequate; and (b) remand this case to the district court for further proceedings.

**BRIAN A. EISEN**

By: /s/ Michael L. Donner, Sr.

Of Counsel

Michael L. Donner, Sr., Esq. (VSB No. 40958)
CARRELL BLANTON FERRIS AND ASSOCS. PLC
7275 Glen Forest Drive Suite 310
Richmond, Virginia 23226
Telephone: (804) 285-7900 Ext. 129
Facsimile: (804) 767-8390
mdonner@carrellblanton.com
Counsel for the defendant, Brian A. Eisen.

## X.    CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*6,819*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: February 1, 2016                    /s/ Michael L. Donner, Sr.
                                           *Counsel for Appellant/Cross-Appellee*

## XI.    CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 1st day of February, 2016, I caused this

Response and Reply Brief of Appellant/Cross-Appellee to be filed electronically

with the Clerk of the Court using the CM/ECF System, which will send notice of

such filing to the following registered CM/ECF users:

Jeffrey H. Geiger
SANDS ANDERSON, PC
Post Office Box 1998
Richmond, Virginia  23218
(804) 783-7248

*Counsel for Plaintiffs – Appellees/*
*Cross-Appellants*

Olimpio L. Squitieri
SQUITIERI & FEARON LLP
32 East 57th Street, 12th Floor
New York, New York  10022
(212) 421-6492

*Counsel for Plaintiffs – Appellees*
*Cross-Appellants*

Jennifer Farer
Charles W. McIntyre, Jr.
MCGUIREWOODS, LLP
2001 K Street, NW, Suite 400
Washington, DC  20006
(202) 857-1700

*Counsel for Defendants – Appellees*

Daniel R. Lapinski
Kevin P. Roddy
WILENTZ, GOLDMAN & SPITZER, PA
90 Woodbridge Center Drive, Suite 900
Woodbridge, New Jersey  07095
(732) 855-6066

*Counsel for Plaintiffs – Appellees/*
*Cross-Appellants*

Elizabeth F. Edwards
MCGUIREWOODS, LLP
800 East Canal Street
Richmond, Virginia  23219
(804) 775-4390

*Counsel for Defendants – Appellees*

I further certify that on this 1st day of February, 2016, I caused the required copies of the Response and Reply Brief of Appellant/Cross-Appellee to be hand filed with the Clerk of the Court.

/s/ Michael L. Donner, Sr.
*Counsel for Appellant/Cross-Appellee*